U.S. BANKRUPTCY COURT
District of South Carolina

Case Number: 07-02582

ADVERSARY PROCEEDING NO: 07-80088

ORDER DENYING DISCHARGEABILITY OF STUDENT LOANS

The relief set forth on the following pages, for a total of 6 pages including this page, is hereby ORDERED.

**FILED BY THE COURT**
**03/31/2008**



US Bankruptcy Court Judge
District of South Carolina

Entered: 03/31/2008

UNITED STATES BANKRUPTCY COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| IN RE:<br><br>Shannon Maria O'Neal,<br>　　　　　　　　　　　　　　Debtor.<br><br>Shannon Maria O'Neal,<br>　　　　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>The Education Resources Institute (TERI),<br>　　　　　　　　　　　　　　Defendant. | C/A No. 07-02582<br><br>Adv. Pro. 07-80088<br><br><br>**ORDER**<br><br>Chapter 7 |

THIS MATTER is before the Court on the complaint of Shannon Maria O'Neal ("Debtor" or "O'Neal") seeking a determination that the education loans co-signed for Kristina F. Kuehn ("Kuehn") should be discharged as an undue hardship on Debtor pursuant to 11 U.S.C. § 523(a)(8). This Court has jurisdiction over the matter pursuant to 28 U.S.C. § 157(b)(2)(I). Pursuant to Fed. R. Civ. P. 52, made applicable to this proceeding by Fed. R. Bankr. P. 7052, the Court makes the following Findings of Fact and Conclusions of Law:

<u>Findings of Fact</u>

1. On or about July 5, 2002, September 6, 2002, August 15, 2003 and August 23, 2004 Kuehn, a German national legally in the United States on a student visa, borrowed money for tuition and living expenses. These transactions were memorialized by certain written ISLP Undergraduate Loan Applications and Promissory Notes. (Composite Exhibit 2 of the Joint Parties).

2. Shannon Maria O'Neal, her friend, co-signed each of the loans.

3. After graduation Kuehn worked briefly with a law firm and deferred payment on the loans. Her visa expired and she left the country in February, 2006 having never made a payment on the

loans.

4. Kuehn and O'Neal are no longer in contact with one another.

5. O'Neal has never made a payment on the loans.

6. O'Neal is approximately 27 years of age, single with no dependents. She previously obtained a two-year associates degree from a technical college. She is employed as a manager of a shoe store.

7. O'Neal wishes to pursue a nursing degree but is unable to continue her education without student loans. She does not qualify for loans because of the extent of the indebtedness she cosigned for Kuehn, which now carries a balance in excess of $55,000.00

8. O'Neal filed a petition for chapter 7 bankruptcy relief on May 14, 2007.

9. TERI is the guarantor of the several loans and stepped into the lenders' shoes following O'Neal's bankruptcy filing.

10. O'Neal's Schedule I reports gross monthly income of $2,491.50 and take home pay of $1,935.24. Schedule J expenses total $2,076 per month and include $600 for rent, $250 for food, utilities of $245, cell phone and internet expenses of $206, and a car payment of S340. O'Neal shares the rent and utilities with a roommate and the expense shown are her share. Her other expenditures are $50 for clothing, $100 for medical and dental, $140 for transportation expenses, $25 for recreation, $10 for haircuts and $35 for pet expenses. A $75 monthly home maintenance expense for her apartment seems otherwise out of place. She received a $456 tax refund in 2007.

11. O'Neal has, other than education loan indebtedness, approximately $15,000 in credit card debt.

12. O'Neal has no significant assets.

Conclusions of Law

A chapter 7 discharge releaves the debtor from all pre-petition debts with the exception of those provided in 11 U.S.C. § 523[1]. § 727(b). An exception is made for government and non-profit backed education loans and education benefit overpayments, obligations to repay educational benefits, scholarships and stipends, and other educational loans as defined by 26 U.S.C. § 221(d)(1). § 523(a)(8)(A), (B). This exception to the discharge of education loans prevails unless "excepting such debt from discharge . . . would impose an undue hardship on the debtor and the debtor's dependents. . . ." § 523(a)(8).

Our circuit has adopted the *Brunner*[2] test for determination of undue hardship in the context of education loan discharge cases. *In re Frushour*, 433 F.3d 393 (4th Cir. 2005). As stated in *Frushour*:

> In order to prove an undue hardship, therefore, a debtor must show: (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans. *Brunner* at 396.

*Frushour* at 400. The debtor has the burden of proving all three factors by a preponderance of the evidence. *O'Hearn v. Educ. Credit Mgmt. Corp. (In re O'Hearn)*, 339 F.3d 559, 565 (7th Cir. 2003)(adopted as the standard for the 4th Circuit, *Frushour* at 400). Debtors seeking to discharge student loans bear the burden of proving that they are "in the limited *class* of debtors for which § 523(a)(8) meant to allow discharge." *Frushour* at 404.

Here the Court need not address the first and second factors of the *Brunner* test because

---

[1] Further reference to the Bankruptcy Code, 11 U.S.C. § 101 *et. seq.*, will be by section number only.

Debtor has not demonstrated any good faith effort to repay the loan.  The third *Brunner* factor

> . . .looks to the debtor's "efforts to obtain employment, maximize income, and minimize expenses. Further, the debtor's hardship must be a result of factors over which she had no control.
>
> [The Court also considers] [t]he debtor's effort to seek out loan consolidation options that make the debt less onerous. . . . .  Although not always dispositive, it illustrates that the debtor takes her loan obligations seriously, and is doing her utmost to repay them despite her unfortunate circumstances.  [There must also be] shown the requisite effort to repay her loans.

*Frushour* at 402.

Debtor has not minimized her expenses.  She spends $150 per month on a cell phone contract and has internet access (which she claimed without explanation to be used in her work).  "Expenditures on such items are generally unnecessary to maintain a minimum standard of living and, under the facts of this case, the failure to minimize or eliminate these expenditures does not demonstrate a good-faith effort to minimize expenses. (Citing *Educational Credit Mgmt. Corp. v. Buchanan,* 276 B.R. 744, 751-52 (N.D.W.Va.2002) (stating that foregoing satellite television and internet service does not constitute an undue hardship)." *Education Credit Management Corp. v. Mosko (In re Mosko),* 515 F.3d 319, 325 (4th Cir. 2008).  The shared utility expense and home maintenance expense seem high.  The medical and dental expense is unsubstantiated.

Debtor has never made a payment on the student loan.  She has never sought consolidation, offered a compromise payment, or otherwise offered to pay or settle her obligation.  She has never inquired about income contingent loan repayment programs such as the William D. Ford Direct Loan Consolidation Program.  Her testimony was only that she encouraged Kuehn to pay the loan or to refinance it.  It appears that Debtor merely regrets her, concededly, bad judgment in cosigning a loan for a friend and now wishes it would go away.

---

[2]  *Brunner v. New York State Higher Educ. Services Corp.*, 831 F.2d, 395 (2d Cir. 1987).

While the failure to meet the third *Brunner* factor is dispositive, the Court turns briefly to the second – the future ability to repay. This factor is intertwined with the third. Debtor is single and works at a job that pays her slightly less that the South Carolina median income. While as manager she must occasionally work some overtime, she has not exhausted the avenues of additional overtime or a second job. Debtor complains that she cannot go back to school for an additional degree, perhaps in nursing as she desires, without educational loans including money for cost of living. This clearly ignores the avenue of part time attendance at college. Without offering evidence of attempts to find better paying employment, Debtor simply states that she cannot find a better job.

Perhaps anticipating the inability to meet all three prongs of the *Brunner* test, Debtor included a second cause of action for dischargeability pursuant to § 105. While the equitable power of courts sitting in bankruptcy is concededly broad, the clear law of our circuit is to the effect that equitable powers cannot be employed in derogation of an applicable statutory provision. The equitable powers of § 105( a) are not "'a license for a court to disregard the clear language and meaning of the bankruptcy statute and rules.'" *Official Comm. of Equity Sec. Holders v. Mabey*, 832 F.2d 299, 302 (4th Cir. 1987). Where a remedy is supplied by statute, § 105 has no place in expanding the available relief.

Debtor has not shown an undue hardship and the education loans are not discharged.